**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| BRIAN BAIER ) | Case No. 24-cv-276 |
| ) | |
| Plaintiff, ) | Judge Hopkins |
| ) | |
| v. ) | Magistrate Judge |
| ) | |
| COMMUNITY HOME HEALTH ) | |
| CARE, INC. ) | |
| ) | |
| Defendant. ) | |

### MOTION OF DEFENDANT, COMMUNITY HOME HEALTH CARE, INC., TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendant, Community Home Health Care, Inc., moves this Court for an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing the complaint of Plaintiff Brian Baier with prejudice and without leave to amend. Count I, alleging unlawful employment retaliation under the False Claims Act, 31 U.S.C. § 3730(h) (the "FCA"), does not actually allege facts demonstrating the crucial element that Plaintiff engaged in protected activity. Counts II and IV, each claims under Ohio law for wrongful termination in violation of public policy, fail as a matter of law because Plaintiff has not and cannot allege the necessary "jeopardy" element required by state law to support such a claim. And Count III, alleging a claim under Ohio Revised Code § 4113.52 for unlawful termination of a whistleblower similarly does not allege all of the elements necessary to state a claim under that statute. The grounds for this motion are set forth in the accompanying memorandum in support.

       Respectfully submitted,

       _____/s/ Patrick M. Quinn_____
       Rick L. Brunner       (0012998)
       Email: rlb@brunnerlaw.com
       Patrick M. Quinn      (0081692)
       Email: pmq@brunnerlaw.com
       Hannah Fard       (0103586)
       Email: hf@brunnerlaw.com
       BRUNNER QUINN
       5001 Horizons Drive, Suite 209
       Columbus, Ohio 43220
       Telephone: (614) 241-5550
       Facsimile: (614) 241-5551
       *Attorneys for Defendant Community Home Health Care, Inc.*

**MEMORANDUM IN SUPPORT**

**I.    Statement of Facts**

Plaintiff Brian Baier was previously employed as a registered nurse by Defendant Community Home Health Care. *See* Complaint [DE1] ("Cmpl.") at ¶5. He alleges that during his employment, he became aware of supposedly fraudulent Medicare and Medicaid billing practices by Community. *Id.* at ¶¶6-7. Plaintiff alleges that he verbally reported his observations and "suspicions" to Community's ownership, Ms. Becky Young and Ms. Tara Boggs. *Id.* at ¶¶9-12.

About a week later, Plaintiff contends that he was retaliated against for his claimed reports of alleged misconduct. So far as alleged in the complaint, the "retaliation" against Plaintiff consisted of having his workstation moved. *Id.* at ¶14. In response to having his desk moved, Plaintiff alleges that he sent an email to his "supervisors" addressing his concerns. *Id.* at ¶16. In actuality, Plaintiff's writing was addressed "to whom it may concern," and included demands such as formal discipline or termination / job reassignment for some of Plaintiff's coworkers, that Plaintiff be designated as a "staff representative" who would be required to be consulted before any employee could be disciplined, and that all management and staff take a course in anti-bullying. *Id.* at Exhibit A. In other words, Plaintiff sought to use his purported concerns as leverage to wield far greater influence over Community and its ownership, management, and operations than warranted by his position as an RN. Plaintiff then alleges that he was terminated five days after sending his writing correspondence. *Id.* at ¶ 18. Plaintiff alleges no facts, beyond temporal proximity, connecting his supposed whistleblowing to his termination.

Following his termination, Plaintiff brought the instant action. His complaint alleges four causes of action: Count I, for termination in violation of the anti-retaliation provision of the False Claims Act, 31 U.S.C. § 3170(h); Count II, a claim under Ohio common law, *see Greeley v. Miami*

1

*Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), for wrongful termination in violation of the public policy espoused by the anti-retaliation provision of the FCA; Count III, for termination in violation of Ohio's statutory whistleblower protection provisions, Ohio Rev. Code § 4113.52; and Count IV, a wrongful termination in violation of the public policy espoused by Ohio Rev. Code § 4113.52

## II.    Law & Argument

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the plaintiff's Complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Roth Steel Prod. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983). While the Court should accept as true all reasonable inferences that might be drawn from complaint it must not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Fitzke v. Shappell*, 468 F.2d 1072, 1076–77 n. 6 (6th Cir.1972); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir.1971). Although a complaint need not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.*, at 555, n.3. "A complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *See Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011).

### B. The Complaint fails to allege sufficient facts to establish a case of retaliation in violation of the FCA.

The False Claims Act, 31 U.S.C. §3729, generally exists as a means "of combating fraud against the Government." *Allison Engine Co., Inc. v. U.S. ex rel. Sanders*, 553 U.S. 662, 669, 128 S.Ct. 2123, 170 L.Ed.2d 1030 (2008) quoting *Rainwater v. United States*, 356 U.S. 590, 592, 78 S.Ct. 946, 2 L.Ed.2d 996 (1958); *see also Sanders v. Allison Engine Co., Inc.*, 703 F.3d 930, 943 (6th Cir.2012) ("The FCA was enacted in 1863, and its original sponsor has been quoted as stating that the purpose of the law was to punish and prevent fraud"). Violation of the FCA may be redressed through civil penalties and treble damages, 31 U.S.C. §3729(a), and may be brought by the Attorney General or by private litigants in a *qui tam* action. 31 U.S.C. § 3729(a), (b).

Substantively, the FCA prohibits a person from "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval," "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim," or conspiring to do so. 31 U.S.C. §3729(a)(1)(A) – (C). The Act also includes an anti-retaliation provision:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h). In order to state a claim for retaliatory discharge in violation of the FCA, a plaintiff must allege "(1) he engaged in protected activity; (2) his employer knew that he engaged in the protected activity; and (3) his employer discharged or otherwise discriminated against the employee as a result of the protected activity." *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 566

3

(6th Cir. 2003); *see also Jones-McNamara v. Holzer Health Systems*, No. 15-3070, 630 Fed.Appx. 394, 398 (6th Cir. Nov. 2, 2015). Plaintiff here sufficiently alleges none of these elements.

*First*, protected activity. Under the FCA's retaliation provision, the protected activity must relate to "involvement with a false claims disclosure" or "exposing fraud." *McKenzie v. BellSouth Tel., Inc.*, 219 F.3d 508, 516 (6th Cir. 2000). "It is not enough to merely report wrongdoing to an employer if the action is not in furtherance of a reasonable or distinct possibility of an FCA investigation of claim." *Mehlman v. Cincinnati Children's Hops. Med. Ctr.*, No. 20-cv-813, 2021 WL 3560571 (S.D.Ohio Aug. 11, 2021), *5.

Plaintiff's internal reporting to management and the owners, as described in the Complaint (Compl., ¶¶ 8–12, 15–17), does not constitute protected activity under the FCA. The Act requires that the employee's actions be "in furtherance of" an action under the statute. *See* 31 U.S.C. § 3730(h); *see also, McKenzie*, 219 F.3d at 516–17 (protected activity does not include "merely urging compliance with regulations"). Internal reporting alone, without more, is insufficient to meet this requirement. *U.S. ex rel. Manieri v. Avanir Pharmaceuticals, Inc.*, No. 15-cv-611, 2021 WL 857102 (S.D.Ohio March 8, 2021), *4 ("to constitute protected activity, an internal report must specifically allege fraud on the government, and not just general misconduct") quoting *Miller v. Abbot Labs.*, No. 14-cv-363, 2015 WL 3773114 (W.D.Ky. June 17, 2015), *6.

Plaintiff's allegations do not meet this standard. Rather, they consist of allegations of "criminal activity[1]," complaints of unqualified personnel writing patient orders or impersonating a registered nurse, critiques of supposedly improper documentation on patients, and concerns about the security of the personal information of staff. Cmpl. at Exhibit A. None of this is the sort of activity that can be understood as related to "fraud on the government, [rather than] just general

---

[1] *But see Sanders*, 703 F.3d at 944-948 (holding that the FCA is civil, rather than criminal, in nature).

4

misconduct." *Manieri*, 2021 WL 857102 at *4 quoting *Miller*, 2015 WL 3773114 at *6. In order to allege a retaliation claim, Plaintiff must allege that he engaged in "activity which reasonably could lead to a viable FCA action," "activity with a nexus to a *qui tam* action, or fraud against the United States government." *McKenzie*, 219 F.3d at 516. Instead, Plaintiff here alleges "merely grumbling to the employer about…regulatory violations," and that does not cut it. *Yuhasz*, 341 F.3d at 567-568 quoting *McKenzie, supra* and *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 743 (D.C. Cir. 1998)

*Second*, an FCA retaliation claim requires allegations that the employer was on notice of the plaintiff's protected activity. *Yuhasz*, 341 F.3d at 566 (requirement is that the "employer knew that he engaged in the protected activity"); *Jones-McNamara*, 630 Fed.Appx. at 398. In order to meet this requirement, Plaintiff must "plead that [Defendant] knew he *was pursuing* an FCA action." *U.S. ex rel. Sheoran v. Wal-Mart Stores East, L.P.*, No. 20-2128, 858 Fed.Appx. 876, 880 (6th Cir. June 4, 2021) (emphasis added); *Yuhasz*, 341 F.3d at 567 ("When seeking legal redress for retaliatory discharge under the FCA, plaintiff has the burden of pleading facts which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government") (quotation omitted). Employees, the Sixth Circuit has held, "'must make clear their intentions of bringing or assisting in an FCA action' to show retaliation." *Wal-Mart, supra* quoting *Yuhasz*, 341 F.3d at 568; *see also Cephas-Hill v. Linden Med. Ctr. / Mid-Ohio Family Practice Associates*, No. 20-cv-4281, 2022 WL 5177771 (S.D.Ohio Aug. 2, 2022) (*Wal-Mart* provided "a clear directive". in requiring the employee demonstrate their intent to bring or assist a substantive FCA claim in order to demonstrate retaliation); *Kachaylo v. Brookfield Tp. Bd. of Trs.*, 778 F.Supp.2d 814, 820 (N.D. Ohio 2011) ("there must be some reason for the employer to suspect that the employee was

5

contemplating a *qui tam* action or was assisting the government in an FCA investigation"). This "strict notice requirement" is satisfied only when "a defendant 'had been put on notice that [the] plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government." *Id.* quoting *Yuhasz*, 341 F.3d at 567.

Plaintiff here does not allege that he was pursuing, or assisting, or intended to pursue or assist in an FCA claim against Defendant. This absence, by itself, precludes any viable FCA retaliation claim. *Wal-Mart, supra*; *Cephas-Hill*, 2022 WL 5177771 at *5 (dismissing FCA retaliation claim where "nowhere in her briefing does Plaintiff suggest that she was contemplating a *qui tam* action or that she was assisting the government in its case"). "In the absence of any real or intended plans to bring or assist in an FCA action, it is unsurprising that" Mr. Baier never "made clear" to Community Health "any such intentions." *Id.* citing *Wal-Mart*, 858 Fed.Appx. at 880 and *Yuhasz*, 341 F.3d at 568. Mr. Baier's "retaliation claim fails because he failed to plead that [Community Health] knew he was pursuing an FCA action." *Wal-Mart, supra*.

The allegations of the complaint that do touch on the second element of a FCA retaliation claim mirror those found insufficient in prior cases. The complaint alleges that Plaintiff observed conduct purportedly in violation of the FCA and that he reported his observations to Community Health's management. Cmpl. at ¶¶7-12. These allegations closely track what the Sixth Circuit held insufficient to state a claim in *Wal-Mart*. In that case, the retaliation plaintiff alleged "that he told his superiors about the allegedly false prescriptions" which purportedly violated the FCA, "but that is not enough. Even when an employee tells their employer that they have witnessed illegal conduct and that other companies have incurred FCA liability for similar conduct," that does not suffice to allege a §3730(h) retaliation claim. *Wal-Mart*, 858 Fed.Appx. at 880 citing *Yuhasz, supra* and *McKenzie v. BellSouth Telcomms., Inc.*, 219 F.3d 508, 518 (6th Cir. 2000). To similar effect,

6

*Cephas-Hill* involved allegations of a Plaintiff who allegedly "told her supervisors that she had concerns about the legality of [the employer's practices] and repeatedly refused to participate in the same." *Cephas-Hill*, 2022 WL 5177771 at *5. Just as Mr. Baier here simply alleges that he reported claimed misconduct to his superiors, and just as Ms. Cephas-Hill did the same, "that is not enough" to state a retaliation claim. *Id.* quoting *Wal-Mart, supra*.

Even were there any doubt on this point, Plaintiff's written complaint to management dispels it. The document briefly mentions the prospect of disciplining individuals involved in false documentation and defrauding the government but says nothing about a private *qui tam* FCA action or any governmental investigation into any claimed FCA violation. It simply recites Plaintiff's view of supposedly criminal misconduct, Cmpl. at Exhibit A, and purports to notify Community Health's leadership of FCA-violating practices. But this does not suffice to allege that the employer was on notice of FCA-protected activity as required to state a retaliation claim. *Wal-Mart, supra*; *Cephas-Hill, supra*

*Third*, plaintiff must allege that he was discharged or discriminated against "as a result of the protected activity." *Yuhasz*, 341 F.3d at 567. Plaintiff here did not engage in any protected activity, nor was Community Health aware of any such protected activity. But even putting these two aside, the Complaint is devoid of allegations that Plaintiff's termination was as a result of any supposed protected activity. This third element requires allegations that "the employee was discharged because of activities which gave the employer reason to believe that the employee was contemplating a *qui tam* action against it." *McKenzie*, 219 F.3d at 517. In order to show that the action was taken "because of" the protected activity, the employee must allege that the retaliation "was motivated, at least in part, by the employee's engaging in protected activity." *Id*. at 514 n. 4, quoting S. Rep. no. 99–345 at 35 (1986), reprinted in 1986 U.S.C.C.A.N. at 5300).

All that the Complaint alleges is that Plaintiff was terminated "soon after" he delivered his laundry list of demands that he be functionally in charge of the operations and human resources functions of his employer. *See* Cmpl. at ¶18 and Exhibit A (demanding that individuals be formally disciplined, that two particular individuals not continue in their current roles, that policies regarding computer security be altered and that Plaintiff himself – an RN with no human resources background or function – "be identified as a staff representative" before "counseling or discipline *(sic)* non-management staff"). But simply linking an adverse employment action as being close in time to supposedly protected activity is "insufficient to establish the requisite 'but for' causation – even if there were actual protected activity and notice to" Community Health. *Manieri*, 2021 WL 857102 at *6 (dismissing for failure to state a claim based only on "the speculative inference that [the plaintiff] must have been terminated for raising his concerns" one month prior to termination). Nor are the remaining causation allegations of the complaint sufficient; the naked allegation that Plaintiff was terminated "in direct response," without any supporting facts, is the very sort of threadbare recitation of elements that does not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.E.2d 868 (2009).

**C. The Complaint fails to allege a claim for violation of Ohio's Whistleblower statute.**

Count III of Plaintiff's Complaint is based on the Ohio Whistleblowers' Protection Act, Ohio Rev. Code § 4113.52. That statute provides that "no employer shall take any disciplinary or retaliatory action against an *(sic)* person for making any report authorized by [Ohio Rev. Code §4113.52(A)(1) or (A)(2)], or as a result of the person's having made any inquiry or taken any other action to ensure the accuracy of any information reported under either such division." The statute defines the sort of "reports" authorized by it:

8

> If a person becomes aware in the course of the person's employment of a violation of any state or federal statute or ordinance or regulation of a political subdivision that the person's employer has authority to correct, and the person reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the person orally shall notify the person's supervisor or other responsible officer of the person's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation."

Ohio Rev. Code § 4113.52(A)(1)(f). However, before being entitled to whistleblower protections under the statute, "a person *shall* make a reasonable and good faith effort to determine the accuracy of any information reported under division (A)(1)…If the person who makes a report…fails to make such an effort, the person may be subject to disciplinary action by the person's employer, including suspension or removal, for reporting information without a reasonable basis to do so…" Ohio Rev. Code § 4113.52(C)[2].

"In order for an employee be afforded protections as a whistleblower, such employee must strictly comply with the dictates of [Ohio Rev. Code §] 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute." *Contreras v. Ferro Corp.*, 73 Ohio St.3d 244, 652 N.E.2d 940, at the syllabus (1995); *see also Youngblood v. Bd. of Commrs. of Mahoning Cty., Ohio*, No. 19-3877, 847 Fed.Appx. 267, 270 (6th Cir. Feb. 17, 2021). As such, to state a prima facie under Ohio Rev. Code §4113.52, plaintiff must allege that "(1) he engaged in activity which would bring him under the protection of the statute, (2) was subject to an adverse employment action, and (3) there was a casual link between the protected activity and the adverse employment action." *Roper v. City of Cincinnati*, No. 22-cv-652, 2023 WL 4466974 (S.D.Ohio July 11, 2023) citing *Wood v. Dorcas*, 142 Ohio App.3d 783, 791, 757 N.E.2d 17 (Ohio App. 6th Dist., 2001). If a plaintiff fails to sufficiently plead a prima facie case, his claim is subject to

---

[2] Plaintiff's complaint is silent as to any allegations that he complied with this statutory obligation to engage in a good faith and reasonable effort to verify the accuracy of his reports.

dismissal at the pleading stage. *Id.* citing *Contreras*, 73 Ohio St.3d at 251 and *Kaiman v. Teledyne Instruments, Inc.*, No. 22-cv-100, 2022 WL 1469796 (S.D.Ohio May 10, 2022) at *3; *Klepsky v. United Postal Service, Inc.*, 489 F.3d 264, 271 (6th Cir. 2007).

Thus, to allege conduct protected by the OWPA, an employee must first verbally notify a supervisor or other responsible officer of the alleged violation and subsequently submit a written report that provides sufficient detail to identify and describe the violation. *Blake v. United Am. Ins. Co.*, 37 F.Supp.2d 997, 1000 (S.D. Ohio 1998). The verbal and then written report must be made to the same superior, and made in that order. *Kaiman*, 2022 WL 1469796 at *3 citing *Holland v. Mercy Health*, No. 18-cv-490, 2018 WL 6041359 (N.D.Ohio Nov. 19, 2018) and *Haney v. Chrysler Corp.*, 121 Ohio App.3d 137, 139, 699 N.E.2d 121 (Ohio App. 6th Dist.1997); *Bear v. Geetronics, Inc.,* 83 Ohio App.3d 163, 167, 614 N.E.2d 803 (Ohio App. 12th Dist.1992). Critically, the reports must "provide sufficient detail to identify and describe the violation." *McKay v. Safe Auto Ins. Group, Inc.*, No. 20-cv-1584, 2021 WL 426019 (S.D.Ohio Feb. 8, 2021), *3.

Plaintiff here founders at the first element of his prima facie case; Because he did not "strictly comply" with the detailed provisions of R.C. §4113.52, he is ineligible to invoke the protections of that statute. He fails in three respects.

First, nowhere in his complaint does Plaintiff allege that he became aware of any supposed misconduct that is within the scope of the OWPA. If Plaintiff believes that there was an "imminent risk" of physical harm or public hazard, his Complaint does not say; Instead, the gist of the allegations of the Complaint is that he thinks Defendant was engaged in some kind of fraudulent misconduct, which does not implicate the sort of physical harm or public safety concerns addressed by the Ohio statute. If Plaintiff believes that he witnessed "an improper solicitation for a contribution," nothing in his complaint tells us that. And if Plaintiff believes whatever he claims

he witnessed constituted a felony, he neither identifies the supposed felony nor provides any underlying facts that would support his conclusion. The most the complaint alleges is that Plaintiff reported what he claims was his reasonable belief that Community Health was engaged in "criminal in nature." Cmpl. at Exhibit A. But to simply characterize something as "criminal" is a far cry from actually doing what the statute protects, which is reporting in connection with a felony. *See, e.g., Youngblood*, 847 Fed.Appx. at 270-271; *Blackburn v. Am. Dental Ctrs.*, Ohio 10th Dist. No. 10AP-9458, 2011-Ohio-5971, ¶14 ("If Blackburn believed Allen committed criminal offenses or felonies with these actions, she was required to provide sufficient detail to identify and describe the violations of law in her written report. She failed to do so, and therefore, failed to comply with the mandates of [Ohio Rev. Code] § 4113.52").

Second, nothing in the complaint demonstrates that Plaintiff made an initial verbal complaint, followed by a written report, and that both were made to the same person. *Kaiman*, 2022 WL 1469796 at *3 citing *Holland, supra* and *Haney, supra* (rejecting OWPA claim where the "oral and written reports, however, were not made to the *same* individual as required by statute"). The Complaint alleges that Plaintiff made various oral complaints to Ms. Becky Young, Ms. Tara Boggs, and Ms. Laura Brown. Cmpl. at ¶¶10-12. But Plaintiff's written report, attached as Exhibit A to his Complaint, is addressed only "To whom it may concern," *Id.* at Exhibit A, and he does not allege that he delivered his written report to any of the same people to whom he verbally complained. This does not satisfy the statutory requirements. *Kaiman, supra*.

Third, Plaintiff's written report is wholly devoid of any meaningful detail so as to comply with the statutory obligation to "provide sufficient detail to identify and describe the violation." Ohio Rev. Code § 4113.52(A)(1)(f); *McKay,* 2021 WL 426019 at *3. The report, sent some ten days after Plaintiff alleges he verbally spoke with Community Health management, does not

11

identify any claim, or any group or batch of claims, that were submitted to a government agency for payment that were fraudulent; The report does not identify who used what type of false documentation, or when, or for what purpose; The report does not identify who use another's credentials to write patient orders, or when, or how, or why. Without any of this basic detail and information, it is inconceivable that Community Health could have conducted its own investigation into Plaintiff's allegations or corrected anything done incorrectly, which is the whole point of the requirement in the first place. A putative OWPA plaintiff cannot simply allege criminal misconduct in the vaguest, most overbroad, and generic of terms, and then find resort in the protections of the statute. The written report requirement exists to afford the employer the opportunity to investigate and correct any misconduct. Plaintiff's high-level and non-specific written diatribe deprived Community Health of that opportunity.

Having failed to allege a prima facie case for a violation of the OWPA, Plaintiff's complaint fails to state a claim for which relief may be granted. It should be dismissed.

### D. Plaintiffs' claims for wrongful termination in violation of public policy fail as a matter of law.

Ohio common law recognizes an independent tort for wrongful termination in violation of public policy. *See Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). A so-called *Greeley* claim consists of four elements:

> (1)That a clear public policy existed and was manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the "clarity" element);
> (2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the "jeopardy" element);
> (3) The plaintiff's dismissal was motivated by conduct related to the public policy (the "causation" element);
> (4) The employer lacked overriding legitimate business justification for the dismissal (the "overriding justification" element).

12

*Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003) citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 352 N.E.2d 653 (1995).

In his complaint, Plaintiff alleges two *Greeley* claims, one based upon the public policy manifested in the False Claims Act's anti-retaliation provision, 31 U.S.C. §3730(h), Cmpl. at ¶¶25-29, and one based upon the public policy of the Ohio Whistleblower's Protection Act, Ohio Rev. Code § 4113.52, Cmpl. at ¶¶37-42. In other words, Plaintiff's complaint simultaneously alleges substantive violations of anti-retaliation laws, as well as virtually-identical common law tort claims predicated upon the public policy espoused in those anti-retaliation laws.

As a matter of Ohio common law, "when the employee's discharge is not actionable under the law that establishes the 'clear public policy,' the companion common-law claim for relief likewise fails as a matter of law." *Arsham-Brenner v. Grande Point Health Care Community*, No. 74835. 2000 WL 968790 (Ohio 8th Dist. July 13, 2000), *7. As such, each of Plaintiff's *Greeley* claims fail the clarity element.

As set forth above, Plaintiff's claim under 31 U.S.C. §3730(h) fails for several reasons. *Supra* at 3-8. Since Plaintiff is "unable to demonstrate a violation of the FCA, he may not bring a claim for discharge in violation of the public policy therein…" *Yuhasz*, 341 F.3d at 568; *See also Gossett v. Byron Prod., Inc.*, 407 F. Supp. 2d 918, 924 (S.D. Ohio 2005). Similarly, since Plaintiff cannot maintain a substantive claim for protection under the OWPA, *supra* at 8-12, he cannot simultaneously maintain a *Greeley* claim predicated upon the public policy set forth in Ohio Rev. Code § 4113.52. *See Shaffer v. OhioHealth Corp*., No. 04AP-236, 2004-Ohio-6523 (Ohio App. 10th Dist.), ¶27 ("an employee who fails to strictly comply with the requirements of R.C. 4113.52 cannot base a tort claim solely upon the public policy embodied in that statute"); *Thompson v.*

13

*Gynecologic Oncology & Pelvic Surgery Assoc.*, No. 06AP–340, 2006-Ohio-6377, ¶50 (Ohio App. 10th Dist.)

In addition, both of Plaintiff's *Greeley* claims fail for a second, independent reason. The "jeopardy" element of such a claim asks whether the plaintiff can demonstrate "that without a common-law tort claim for wrongful discharge…dismissing employees under circumstances like those involved in plaintiff's dismissal would jeopardize the public policy." *Tracy v. Northrop Grumman Sys. Corp.*, No. 08-cv-126, 2009 WL 690255 (S.D.Ohio March 12, 2009), *3. In this regard, the Ohio Supreme Court has explained that recognition of a *Greeley* claim is generally inappropriate when based upon a statutory claim that already contains a comprehensive set of remedies available in a private right of actino:

> Where, as a here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right *and* remedies for its breach, "the issue of adequacy of remedies" becomes a particularly important component of the jeopardy analysis. "If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy." Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

*Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 773 N.E.2d 526 (2002) (citations omitted); *see also House v. Iacovelli*, 159 Ohio St.3d 466, 2020-Ohio-435, 152 N.E.3d 178, ¶16 ("It is less likely that a wrongful-termination-in-violation-of-public-policy claim is necessary when remedies for statutory violations are included in the statutory scheme").

Given that Ohio law holds it "unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statute upon which the plaintiff depends the public policy claim and when those remedies adequately protect society's interest by discouraging wrongful conduct," *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 26, ¶27, courts have routinely rejected the notion of a viable wrongful discharge claim based on the

14

public policy set forth in the FCA's anti-retaliation provision or the OWPA. *See Tracy*, 2009 WL 690255 at *5 (FCA); *Gosset*, 407 F.Supp.2d at 924 (FCA); *Shaffer*, 2004-Ohio-6523 at ¶27 (OWPA); *Thompson*, 2006-Ohio-6377 at ¶50 (OWPA). Nothing in Plaintiff's complaint offers any reason to depart from these well-reasoned conclusions holding that *Greeley* claims may not be predicated upon the public policy embodied in either 31 U.S.C. §3730(h) or Ohio Rev. Code § 4113.52.

**III.  Conclusion**

For all of the foregoing reasons, none of the four causes of action identified in Plaintiff's complaint sufficiently allege a claim upon which relief can be granted. Plaintiff's complaint should be dismissed in its entirety, with prejudice, and without leave to amend.

Respectfully submitted,

<u>        /s/ Patrick M. Quinn         </u>
Rick L. Brunner            (0012998)
Email: rlb@brunnerlaw.com
Patrick M. Quinn           (0081692)
Email: pmq@brunnerlaw.com
Hannah Fard               (0103586)
Email: hf@brunnerlaw.com
BRUNNER QUINN
5001 Horizons Drive, Suite 209
Columbus, Ohio 43220
Telephone: (614) 241-5550
Facsimile: (614) 241-5551
*Attorneys for Defendant Community Home Health Care, Inc.*

15

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 15th day of July, 2024, a copy of the foregoing was filed with the Court's CM/ECF system which will send notice of the same to all registered users of that system, including the following:

Stephen E. Imm
Finney Law Firm, LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
Email: stephen@finneylawfirm.com

             /s/ Patrick M. Quinn
             Patrick M. Quinn  (0081692)