IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BRIAN BAIER ) | Case No. 24-cv-276 |
| ) | |
| Plaintiff, ) | Judge Hopkins |
| ) | |
| v. ) | |
| ) | |
| COMMUNITY HOME HEALTH ) | |
| CARE, INC. ) | |
| ) | |
| Defendant. ) | |

**REPLY OF DEFENDANT, COMMUNITY HOME HEALTH CARE, INC., IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**I.  Law & Argument**

**A. The Amended Complaint Fails to State a Claim for False Claims Act Retaliation.**

Under the False Claims Act, in "order to establish a claim for retaliatory discharge, a plaintiff must show (1) he engaged in protected activity; (2) his employer knew that he engaged in protected activity; and (3) his employe discharged or otherwise discriminated against the employee as a result of the protected activity." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir.2003). Plaintiff's amended complaint does not sufficiently allege any of these elements.

**1. Plaintiff did not engage in Protected Activity within the meaning of the False Claims Act.**

A retaliation plaintiff may demonstrate protective activity through "one of two types of actions: those 'in furtherance of an action under [section 3730 of the FCA],'' or those 'in furtherance of…other efforts to stop [one] or more violations of [the FCA]." *Kem v. Bering Stratis Information Technology*, No. 14-cv-263, 2014 WL 5448402 (S.D.Ohio Oct. 22, 2014). Plaintiff

1

appears to concede (or, at a minimum, his amended complaint does not contradict) that he did not engage in any activity in furtherance of an FCA *qui tam* action. *Id.* He therefore relies on the claim that he engaged in protected activities in the second category, those in effort to stop one or more FCA violations. *Id.*

In doing so, Plaintiff makes much of the 2009 statutory amendments to the FCA, which broaden its scope to encompass "efforts to stop one or more violations" of the FCA. 31 U.S.C. § 3730(h). But these amendments do not save his otherwise deficient claim. Even under the amended FCA, protected activity must still be activity "in furtherance of," at a minimum, an "effort[] to stop 1 *(sic)* or more violations of the FCA." *Id.* This "in furtherance language of the statute requires more than merely urging compliance with regulations." *U.S. ex rel. Manieri v. Avanir Pharmaceuticals, Inc.*, No. 15-cv-611, 2021 WL 857102 (N.D.Ohio March 8, 2021) citing *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 516 (6th Cir. 2000). Thus, even post-amendment, "to constitute protected activity, [an internal report] must specifically allege fraud on the government, and not just general misconduct." *Id.* quoting *Miller v. Abbott Labs*, No. 14-cv-363, 2015 WL 3773114 (W.D.Ky., June 17, 2015), *6. It is on this point that the Amended Complaint founders.

As Plaintiff's own opposition papers confirm, his allegations center on claimed "fraudulent activities" related to the Medicare and Medicaid programs and which amounted to "billing irregularities." Mem. in Opp. [DE 9] at 5-6. He recounts an email purporting to memorialize a conversation with Community Home Health's ownership about these "billing irregularities." These are insufficient: "Both the plain language of the statute and relevant caselaw suggest that, to receive protection under the statute, an employee must be pursuing an effort to stop a *specific* violation (or potential violation) of the FCA of which he or she is aware." *Kem*, 2014 WL 5448402

at *3 (emphasis in original). "To constitute an effort to stop a specific (or potential) violation of the FCA, an employee's conduct must be aimed at stopping specific fraudulent claims against the government." *Verble v. Morgan Stanley Smith Barney, LLC*, 148 F.Supp.3d 644, 657 (E.D.Tenn.2015).

Plaintiff does not allege his activity in connection with "specific fraudulent claims" as required to allege an FCA retaliation claim. *Id.* The most the Amended Complaint contains are the bare allegations that Plaintiff "believed" that he saw "billing irregularities" that might constitute Medicare or Medicaid fraud. These "general conclusions…are 'not entitled to the assumption of truth'" at this stage. *Id.* (quotation omitted). Nor, even were they assumed true for purposes of a motion to dismiss, would they suffice: Generalized allegations of Medicare or Medicaid fraud do not satisfy the obligation to stop *specific* claims or violations of the FCA. *Kem, supra*; *see Kachaylo v. Brookfield Twp. Bd. of Trustees*, 778 F.Supp.2d 814 (N.D.Ohio 2011) (Allegations that defendants "presented or caused to be presented numerous false claims for payment or approval in violation of the False Claims Act" are "broad conclusory allegations…insufficient to meet the first requirement" of an FCA retaliation claim).

It "is not to say that any employee who complains of practices at an employer delivering services to the government can claim FCA retaliation if subsequently fired." *U.S. ex rel. Crockett v. Complete Fitness Rehab., Inc.*, No. 16-2544, 721 Fed.Appx. 451, 461 (6th Cir. Jan. 9, 2018). The FCA's anti-retaliation provision is not designed to protect "merely grumbling to the employer about…regulatory violations." *Yuhasz*, 341 F.3d at 567-568. On the allegations of his amended complaint, that is all Plaintiff here did.

3

> **2. Plaintiff does not Allege that Community Home Health Knew he was Engaged in Protected Activity Consisting of – as Clear Sixth Circuit Case Law Requires – Bringing or Assisting in a False Claims Act Case or Investigation.**

The second element of an FCA retaliation claim requires the plaintiff to plead that his "employer knew that he engaged in the protected activity." *Yuhasz*, 341 F.3d at 566. The Sixth Circuit has been very clear about what this element requires: "Employees 'must make clear their intentions of bringing or assisting in an FCA action' to show retaliation." *U.S. ex rel. Sheoran v. Wal-Mart Stores East, L.P.*, No. 20-2128, 858 Fed.Appx. 876, 880 (6th Cir. June 4, 2021) quoting *Yuhasz*, 341 F.3d at 566. An FCA retaliation plaintiff, like the Plaintiff where who "fail[s] to plead that [the employer] knew he was pursuing an FCA action" does not allege a viable claim. *Id.*; *see also McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 518 (6th Cir. 2000) (an FCA retaliation claim fails absent allegations that the employer "had reason to a believe a *qui tam* action was a 'distinct possibility' or was being 'contemplated'" by the employee).

Plaintiff resists this conclusion but he is simply wrong on the law. Citing only a handful district court opinions, Plaintiff says he need not have disclosed to Community Health an intention to bring or assist in a Fair Claims Act investigation or litigation. Mem. in Opp. [DE 9] at 8-9. These non-binding authorities must, of course, yield to the express command of the Sixth Circuit just three years ago that "[e]mployees 'must make clear their intentions of bringing or assisting in an FCA action' to show retaliation," and that an FCA retaliation claim therefore fails absent allegations that the employer "knew [the employee] was pursuing an FCA action." *Wal-Mart*, 858 Fed.Appx. at 880.

The Sixth Circuit has long required a retaliation plaintiff to allege that the employe knew "a *qui tam* action was a 'distinct possibility' or was being 'contemplated,'" *McKenzie* 219 F.3d at 518, or that the employer "had been put on notice that [the] plaintiff was either taking action in

4

furtherance or a private *qui tam* action or assisting in an FCA action brought by the government." *Yuhasz*, 341 F.3d at 567. All of the cases relied upon by Plaintiff – *Mikhaeil v. Walgreens Inc.*, No. 13-14107, 2015 WL 778179 (E.D.Mich., Feb. 24, 2015), *Jones-McNamara v. Holzer Health Sys., Inc.*, No. 13-cv-616, 2014 WL 1671495 (S.D.Ohio, April 28, 2014, and *Bourne v. Provider Servs. Holdings, LLC*, 12-cv-935, 2019 WL 2010596 (S.D.Ohio May 7, 2019) – recognize these holdings, but believed them to be no longer applicable "in light of the [2019] amendment" to the FCA's anti-retaliation provision. *Mikhaeil*, 2015 WL 778179 at *9. Plaintiff makes the identical argument here. Mem. in Opp. [DE 9] at 8-9.

"It would seem, however, that the district courts [in *Mikhaeil*, *Jones-McNamara*, and *Bourne*] were mistaken in their analysis" in light of the 2021 Sixth Circuit decision in *Wal-Mart*. *Cephas-Hill v. Linden Med. Ctr. / Mid-Ohio Family Practice Associates*, No. 20-cv-4281, 2022 WL 5177771 (S.D.Ohio Aug. 2, 2022). *Wal-Mart*, as Judge Watson explained, provided "a clear directive: 'Employees must make clear their intentions of bringing or assisting in an FCA action to show retaliation.'" *Id.* quoting *Wal-Mart*, 858 Fed.Appx. at 880. "This Court is bound to follow" this rule "at least until the Sixth Circuit sees fit to revisit" it.

The Amended Complaint does not allege that Plaintiff intended to bring or assist in an FCA action, *Wal-Mart*, 858 Fed.Appx. at 880, that Community Health knew Plaintiff was pursuing an FCA action, *Id.*, or that Community Health had any reason to think that an FCA action was a "distinct possibility" being "contemplated" by Plaintiff, *McKenzie*, 219 F.3d at 518. Absent any of these allegations, his retaliation claim fails:

> Nowhere in [his] briefing does Plaintiff suggest that [he] was contemplating a *qui tam* action or that [he] was assisting the government in its case. In the absence of any real or intended plans to bring or assist in an FCA action, it is unsurprising that Plaintiff never "made clear" to Defendant[] any such intentions. True, Plaintiff represents that [he] told [his] supervisors that [he] had concerns about the legality

5

of [Defendant's] practices and repeatedly refused to participate in the same. However, as in *Wal-Mart*, "that is not enough."

*Cephas-Hill*, 2022 WL 5177771 at *5.

### 3. Plaintiff Does Not Sufficiently Allege that he was Discharged because of any Protected Activity.

A claim for FCA retaliation further requires that an employee be discharged "because of" protected activity, meaning that the retaliation "was motivated, at least in part, by the employee's engaging in protected activity." *McKenzie*, 219 F.3d at 514, n.4. In other words, a retaliation claim fails unless the employee can sufficiently allege "that his 'protected activity' was the 'but for' cause of his termination." *Manieri*, 2021 WL 857102 at *6.

Plaintiff's only allegation touching on this causation element is that he delivered to Community Home Health a laundry list of demands (including that equivalent-level co-workers be disciplined or reassigned, and that he be appointed "staff representative" permitted to weigh in before other employees were to be disciplined), and then was fired soon after. Mem. in Opp. [DE 9] at 9-11. Citing a litany of cases, Plaintiff argues that the temporal proximity between his activity and his termination, in and of itself, is enough to sufficiently allege this element. *Id.* Not a single one of these cases involves a claim of retaliation under the FCA. *Id.* (citing cases involving ADEA, 1st Amendment, the ADA, the FMLA, and Title VII). And even among those cases, they recognize that is it the rare and unique situation in which temporal proximity alone will support an inference of causation. *See, e.g., Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008) ("Where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality"). On Plaintiff's own allegations, nearly a month elapsed between his supposed protected activity and his ultimate termination. Mem. in

6

Opp. [DE 9] at 10. "The speculative inference is that he must have been terminated for raising his concerns in [February, 2024]. These allegations are insufficient to establish the requisite 'but for' causation – even if there were actual protected activity and notice to" Community Home Health. *Manieri*, 2021 WL 857102 at *6.

### B. The Amended Complaint Fails to State a Claim under the Ohio Whistleblowers' Protection Act, Ohio Rev. Code § 4113.52

In order to allege a claim under Ohio Rev. Code § 4113.52, the Ohio Whistleblowers' protection Act, a plaintiff must allege that "(1) he engaged in activity which would bring him under the protection of the statute, (2) was subject to an adverse employment action, and (3) there was a casual link between the protected activity and the adverse employment action." *Roper v. City of Cincinnati*, No. 22-cv-652, 2023 WL 4466974 (S.D.Ohio July 11, 2023).

Under the OWPA,

> If a person becomes aware in the course of the person's employment of a violation by a fellow employee of any state or federal statute, any ordinary or regulation of a political subdivision, or any work rule or company policy of the person's employer and the person reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the person orally shall notify the person's supervisor…of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.

Ohio Rev. Code § 4113.52(A)(3). Should a person do so, "no employer shall take any disciplinary or retaliatory action against a person for making any report" described in that section "if the person made a reasonable and good faith effort to determine the accuracy of any information so reported…" Ohio Rev. Code § 4113.52(B).

Plaintiff's opposition papers misread the statute. An employee is entitled to the protections of the OWPA in specifically defined circumstances: "The employee must have reasonably believed that the alleged violation was either 1) a criminal offense that was likely to cause

7

imminent risk of physical harm; 2) a criminal offense that was likely to cause a hazard to public health or safety; or 3) a felony." *Dobrski v. Ford Motor Co.*, No. 09-cv-963, 2013 WL 1303790 (N.D.Ohio Jan. 18, 2013), *9 citing *Books v. Martin Marietta Util. Servs.*, No. 974068, 1998 WL 739890 (6th Cir. Oct. 8, 1998), *4 and *Naples v. Rossi*, No. 04MA172, 2005-Ohio-6931 (Ohio App. 7th Dist.); *see also Youngblood v. Bd. of Commrs. of Mahoning Cty., Ohio*, No. 19-3877, 847 Fed.Appx. 267, 270 (6th Cir. Feb. 17, 2021) (affirming dismissal of OWPA claim where "nothing in Youngblood's complaint suggests that she believed the alleged misconduct she reported was a criminal offense likely to cause physical harm, a felony, or improper solicitation").

The OWPA is not a generalized, catch-all provision. It is instead a narrowly drafted statute that affords protections to those who observe specific types of conduct. Try as he might, and even crediting the well-pled factual allegations of the Amended Complaint as true, Plaintiff simply does not fall within the scope of the statute. The square peg of Plaintiff's theory of the case does not fit within the round hole of the OWPA's language.

To start, take the conduct at issue itself. According to Plaintiff, he observed billing irregularities, "billing on patients before the necessary information/documentation was completed," and "billing was not being submitted correctly." Am.Cmpl. [DE 6] at Exhibit B, Exhibit C. These presented, according to Plaintiff, ""ethical/moral concerns." *Id.* Plaintiff alleges that this conduct violated 31 U.S.C. § 3729(a)(1)(A), the False Claims Act's civil remedies provision. Mem. in Opp. [DE 9] at 13-14. But citing back to a statute providing a civil remedy for presenting false claims to the government does nothing to bring the alleged conduct within the scope of a statute geared towards an "imminent risk of physical harm" or a public safety hazard. *Dobrski*, 2013 WL 1303790 at *9.

Next, consider that the OWPA requires a would-be plaintiff to make a verbal report, followed by a written report, and that they be made to the same person. *Kaiman v. Teledyne Instruments, Inc.*, No. 22-cv-100, 2022 WL 1469796 (S.D.Ohio May 10, 2022). According to Plaintiff's timeline, he made verbal reports to Ms. Boggs, Ms. Young, and Ms. Brown, Am. Cmpl. [DE 6] at ¶¶10-12, and subsequently sent written reports to those same three by email, *Id.* at ¶¶17, 19, Exhibit B, Exhibit C. But both of Plaintiff's written reports are addressed "To Whom it May Concern." The first of these is obviously drafted for an audience outside of Community Home Health's management or ownership, given its addressee and its reference to each of Ms. Boggs, Young, and Brown in the third person. The second does not identify any apparent violation at all, it simply is a recitation of what steps or actions the plaintiff wanted to see happen. Plaintiff's generalized workplace grievances and changes he wanted to see his employe make are not the same thing as a "written report that provides sufficient detail to identify and describe the violation." Ohio Rev. Code. § 4113.52(A)(1)(a).

Finally, and most significantly, Plaintiff's proffered written reports are woefully under-specific to provide the "sufficient detail" required by the OWPA. *Id.* Nowhere in either letter did Plaintiff identify any particular patient, any particular claim, any group or batch or series of claims, that were the subject of any supposed misconduct. Even charitably construing Plaintiff's "reports," there is nothing contained within them that would have afforded Community Home Health the opportunity to investigate his allegations. For example, what documentation was or is false? Which services were charged to the government that were not rendered by a registered nurse, and when? Who impersonated which registered nurse, when, and how? Who allowed their name and credentials to be used by another, who was the one who used those credentials, and when did all of this happen? Taking Plaintiff at his word, he claims that all of this happened (It didn't, but he

9

alleges otherwise). He most certainly could have provided further detail beyond just listing a couple of names without linking any of them to any particular misconduct. The statute requires this level of detail and information because it is not supposed to provide a windfall to an employee, but instead to afford an employer an opportunity to investigate and correct any deficiencies found. Plaintiff does not discharge his burden by naming three individuals and leaving it at that.

Plaintiff's case law does not save him on this point either. In *Rheinecker v. Forest Laboratories, Inc.*, 813 F.Supp. 1307 (S.D.Ohio 1993), the plaintiff's written report "included a two page 'stability assay report' and a page from a lab notebook reporting the results of the failed stability test," which gave the employer enough detail to know of the allegation that a particular drug had failed a particular test. *Id.*, 813 F.Supp. at 1311. And in *Keefe v. Youngstown Diocese of Catholic Church*, 121 Ohio App.3d 1, 698 N.E.2d 1009 (Ohio App. 5th Dist. 1997), the written report identified that a particular employee (a school principal) was using two specific financial accounts (intended for preschool funds, and milk funds) to pay employee wages without also paying social security withholdings on those wages. *Id.*, 121 Ohio App.3d at 7.

Plaintiff's written reports here are in no way analogous to these cases. In those cases, the employer, armed with nothing more than the written reports, would know *exactly* where to look to investigate. In contrast, Plaintiff's reports here told Community Home Health nothing more than that some unspecified claims were billed improperly, and gave no more detail. This does not satisfy the statutory obligation to provide "sufficient detail to identify and describe the violation." Ohio Rev. Code. § 4113.52(A)(1)(a).

### C. The Amended Complaint Fails to State a Claim for an Ohio Common-Law Claim of Wrongful Discharge in Violation of Public Policy

The employment relationship in Ohio is generally at-will. *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 241, 773 N.E.2d 526 (2002). One of the recognized exceptions to the general rule

of at-will employment involves a termination in violation of public policy, first recognized by the Ohio Supreme Court in *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). Plaintiff's two *Greeley* claims – one based upon the public policy espoused in the False Claims Act, and a second based upon the public policy espoused in the Ohio Whistleblowers' Protection Act – both fail, for two identical reasons.

      First, it is black letter law that "when the employee's discharge is not actionable under the law that establishes the 'clear public policy,' the companion common-law claim for relief likewise fails as a matter of law." *Arsham-Brenner v. Grande Point Health Care Community*, No. 74835, 2000 WL 968790 (Ohio App. 8th Dist. July 13, 2000). As explained in our motion to dismiss, and again above, each of Plaintiff's claims under the FCA and the OWPA fail, and accordingly, Plaintiff's "companion" claims for discharge in violation of public policy similarly fail. *Id.* For his part, Plaintiff does not dispute this proposition, he simply contends that because he has alleged actionable FCA and OWPA claims, his *Greeley* claims survive as well. This is not the case, and so Plaintiff's common-law wrongful discharge claims should be dismissed.

      Second, in order to state a viable *Greeley* claim, the Plaintiff must allege that "dismissing employees under circumstances like those involved in [his] dismissal would jeopardize the public policy" set forth in the FCA and the OWPA. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). The Ohio Supreme Court has explained this element: "If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy." *Wiles*, 96 Ohio St.2d at 244. "Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." *Id.* "In that situation, the public policy expressed in the statute would not be jeopardized by the absence of a common-

11

law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct." *Id.*

Given this framework, the courts to have considered the issue have *uniformly* held that the existence of civil remedies under the FCA's anti-retaliation provision renders an Ohio common-law wrongful discharge in violation of the FCA's public policy unavailable: "31 U.S.C. § 3730(h) prohibits employers from retaliating against an employee who participates in acts under this section. Therefore, there is an adequate remedy available to satisfy the public policy concerns." *Tracy v. Northrup Grumman Sys. Corp.*, No. 08-cv-126, 2009 WL 690255 (S.D.Ohio March 12, 2009) (dismissing *Greeley* claim predicated on the FCA for failure to state a claim); *Gossett v. Byron Products, Inc.*, 407 F.Supp.2d 918 (S.D.Ohio 2005) (refusing to recognize a *Greeley* claim based upon "the policy established in 31 U.S.C. §3730(h)").

Similarly, because "it is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct," *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, ¶37, Plaintiff here cannot maintain a wrongful-discharge in violation of public policy claim. Such a claim exists in Ohio "only to the extent that [the plaintiff] complied with [the OWPA] and/or to the extent it [is] based on a public policy independent of that embodied in" the OWPA. *Thompson v. Gynecologic Oncology & Pelvic Surgery Assoc.*, No. 06AP-340, 2006-Ohio-6377 (Ohio App. 10th Dist. Dec. 5, 2006), ¶ 42. As addressed above, Plaintiff here did not comply with the OWPA, and he cannot find refuge in a common law *Greeley* claim.

**II.     Conclusion**

For all of these reasons, as well as those set forth in the Motion, the Amended Complaint should be dismissed in its entirety, with prejudice and without leave to amend.

Respectfully submitted,

/s/ Patrick M. Quinn
Rick L. Brunner         (0012998)
Email: rlb@brunnerlaw.com
Patrick M. Quinn        (0081692)
Email: pmq@brunnerlaw.com
Hannah Fard             (0103586)
Email: hf@brunnerlaw.com
BRUNNER QUINN
5001 Horizons Drive, Suite 209
Columbus, Ohio 43220
Telephone: (614) 241-5550
Facsimile: (614) 241-5551
*Attorneys for Defendant Community Home Health Care, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of October, 2024, a copy of the foregoing was filed with the Court's CM/ECF system which will send notice of the same to all registered users of that system, including the following:

Stephen E. Imm
Finney Law Firm, LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
Email: stephen@finneylawfirm.com

/s/ Patrick M. Quinn
Patrick M. Quinn        (0081692)
